**LOU CHURCH and J. D. SAWYER, v. STATE OF FLORIDA**

9 So. (2nd) 164                      En Banc
July 7, 1942         Rehearing Denied July 28, 1942

Aronovitz & Goldstein, for appellants.

J. Tom Watson, Attorney General, Millard B. Conklin, Assistant Attorney General, Woodrow M. Melvin, Special Assistant Attorney General, Robert R. Taylor, County Solicitor, and Glenn C. Mincer, Assistant County Solicitor, for appellee.

TERRELL, J.:

In November, 1941, a deputy sheriff of Dade County made the following affidavit before one of the circuit judges:

"Before me, George E. Holt, Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for the County of Dade, personally appeared Jeff D. Gautier, a Deputy Sheriff of Dade County, Florida, who being by me first duly sworn, deposes and says that he believes and has good reason to believe that in a certain building known as 3012 N. W. 27th Ave., in the City of Miami, Dade County, Florida, gambling is being conducted by a person or persons whose names are to the affiant unknown, contrary to the laws of the State of Florida; and that the said premises are being used for the operation of a gambling room contrary to the laws of this State; and that affiant's reason for his belief is that he has learned from an investigation conducted by him as a Deputy Sheriff that there is in said building at said address numerous telephones and telephone equipment such as is com-

monly used by bookmakers in taking and making unlawful bets and wagers on horse races conducted at different points and that in said building there is certain telephone equipment connected with other places known by affiant to be operated and conducted as book making places and that affiant has information from other persons making undercover investigation that unlawful wagering and betting is actually being conducted within said building.

"Wherefore, affiant prays that a search warrant be issued according to law commanding the Sheriff of Dade County, Florida, or his deputies, with proper and necessary assistance, to search said premises and seize as evidence the gambling implements, apparatus and devices used for the purpose of gambling in order that the evidence may be procured to be used in the prosecution of such persons unlawfully operating said premises."

On the basis of said affidavit, the circuit judge issued the following warrant

"Whereas, Jeff D. Gautier, has this day made oath before me, that he has probable cause to believe and does believe that a certain building known as 3012 N. W. 27th Avenue, in the City of Miami, Dade County, Florida, is being unlawfully used for the purpose of gaming and gambling, contrary to the laws of the State of Florida.

"These, Therefore, Are To Command You, with proper and necessary assistance, either in the day time or in the night time as the exigencies of the occasion may demand or require, in the said building known as 3012 N. W. 27th Avenue, in the City of Miami, Dade County, Florida, there to diligently search for the same gambling implements and devices

used for the purpose of gaming and gambling, and any part thereof, and if the same shall be found upon such search, that you bring the said goods so found and also the bodies of the persons found to be operating said place, before me to be disposed of and dealt with according to law."

A motion to quash the affidavit and search warrant were overruled and this appeal was prosecuted.

It is first contended that the motion to quash should have been granted because the affidavit is fatally defective in that it fails to describe the parties or goods to be seized, that it does not contain facts to support the affidavit and that such facts as are alleged are secondary and based on information and belief.

Section twenty-two of our Declaration of Rights and the Fourth Amendment to the Federal Constitution are relied on to support this contention. They are almost identical in wording and require that the person to be seized be described if known. The affidavit alleges that "gambling is being conducted by a person or persons whose names are unknown." Such a description has been pronounced sufficient. Cornelius on Search and Seizure 315, 56 C. J. 1226.

The place was described in the affidavit as a "certain building known as 3012 N. W. 27th Avenue in the City of Miami, Dade County, Florida." Such a description was ample. The property was described as "telephones and telephone equipment such as is commonly used by bookmakers in taking and making unlawful bets and wagers on horse races." These allegations were sufficiently predicated and proof of them is sufficient to constitute the place described prima facie a gambling house and cast the burden on defendants of proving to the contrary, Section 7661, Compiled

General Laws of 1927. This holding is not in conflict with Sections 8507 and 8513, Compiled General Laws of 1927, relied on by appellants.

The general current of authority supports the view that if the name of the person is known it should be given but if not known, the name or description is not required. It is also permissible to recite that the owner of the property is unknown. If it is not in the possession of the party arrested, he cannot complain. United States v. Kaplan, 286 Fed. 963; Sherwood v. State, 480 Okla. Civ. 263, 290 Pac. 1112; United States v. Camarota, 278 Fed. 388. In this case appellants do not show or contend that the premises searched was their dwelling, that they owned it or rented it or that they were in possession of it. Where this is the case, the parties cannot complain that the search is unreasonable. Creech v. United States, 97 Fed. (2nd) 390; Cantrell v. United States, 15 Fed. (2nd) 953; Gowling v. United States, 64 Fed. (2nd) 796; Whitcombe v. United States, 90 Fed. (2nd) 290.

The Fourth Amendment to the Federal Constitution prohibiting unreasonable searches and seizures stems from the principle of the comman law securing to every citizen in his home and office immunity from interference by the State and the protection of his person, property, and papers from legal process. Prior to the Revolution, the liberty of the citizen in the colonies was harrassed by writs of assistance in the hands of revenue officers to search designated places for smuggled goods, persons, and papers. In this country and in England, executive warrants were issued to search private houses to recover books and papers that might be used as evidence against the owner. The practice was the remnant of a juris-

prudence that had its roots in prerogative as against democratic power and was often accompanied by ruthless intrusion of governmental agents into private homes and effects to secure evidence for political prosecutions. These writs were exasperating to the citizen, contrary to every democratic impulse and were considered the most flagrant examples of arbitrary power known to the people, hence the language of the Fourth Amendment which was repeated in all the State Constitutions. Section Twenty-two, the Declaration of Rights, Constitution of Florida. May's Constitutional History of England, Chapter Eleven, contains an interesting discussion of the question.

It will thus be seen that the primary purpose of the amendment was to protect personal liberty and private property and to put a stop to invasion of the home and its secret precincts by the government or its agents. The amendment however only inhibited "unreasonable" searches and seizures. It contemplated that personal liberty and private property might be forfeited and where such was the case, the amendment offered no immunity. It has never been permitted to be invoked for the purpose of protecting one in the commission of a crime and certainly under the circumstances recited in the affidavit in this case, it will not be invoked to inhibit a search to ascertain whether or not the law is being violated. There is no suggestion here of an invasion of the home, the place to be searched being one alleged to be used for conducting an unlawful business.

It is next contended that the search warrant should have been quashed because it was obtained for the purpose of securing evidence to prosecute appellants.

Section 8506, Compiled General Laws of 1927, prescribes the circumstances under which search warrants may be issued and the grounds recited in the affidavit are well within the statute. Search warrants have frequently been issued to search for stolen goods, gaming implements, lottery tickets, obscene books, contraband liquor, and other chattels used for illegal purposes.

A search warrant for the sole purpose of securing evidence to convict should not be issued but in this case it was for the purpose of apprehending those alleged to be engaged in an illegal enterprise. It was not in the home of defendants and in fact they claimed no right or title in the building to be searched. When this is the case, the search cannot be said to be unreasonable as to them.

This Court has been diligent in protecting the liberty guaranteed by the Fourth Amendment; at the same time it should not be permitted as a shield to protect those engaged in illegal acts. This is particularly true when they fail to bring themselves within the category of rights the amendment was designed to protect.

Section 8506, supra, contemplates that chattels secured in searches like this may be used as evidence and its use has been otherwise approved. People v. Adams, 176 N. Y. 351, 68 N. E. 636, affirmed in 192 U. S. 585. This was a gambling case in which the books and papers of defendant were seized and used as evidence. There is a wealth of literature on the admissibility of such evidence, both sides being well supported. The best authority in the country on evidence, Dean Wigmore, repudiates the doctrine that it

should be excluded.    Wigmore on Evidence, Vol. 8, Sec. 2183-4.

Affirmed.

BROWN, C. J., WHITFIELD, BUFORD, CHAP-MAN, THOMAS and ADAMS, JJ., concur.